NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES RODRIGUEZ, : | |
| : | |
| Petitioner, : | |
| : | Civil Action No. 04-158 (JAG) |
| v. : | |
| : | **O P I N I O N** |
| UNITED STATES OF AMERICA, : | |
| : | |
| Respondent. : | |
| : | |

**GREENAWAY, JR., U.S.D.J.**

      Petitioner Charles Rodriguez ("Petitioner") has filed the instant pro se motion to vacate his sentence, pursuant to 28 U.S.C § 2255 ("§ 2255"). Petitioner contends that his sentence should be vacated for four reasons. First, Petitioner claims that this Court erred by sentencing him under a statute that was not charged in the indictment. Second, Petitioner claims that Respondent (or "the Government") violated his due process rights by conducting a sting operation targeted at Petitioner. Third, Petitioner claims that his counsel's ineffective assistance violated his Sixth Amendment right to counsel. Finally, Petitioner claims that Blakely v. Washington, 542 U.S. 296 (2004), should apply to the instant case, and that based upon Blakely, his sentence should be vacated. For the reasons set forth below, Petitioner's motion is denied.

1

**FACTS**[1]

On July 19, 1997, a bank robbery took place at the Corestates Bank in Woodlynne, New Jersey.  This robbery was videotaped on the bank's surveillance cameras.  The tape shows Petitioner, his brother (Joseph Rodriguez), and one or two other males entering the bank with guns resembling assault rifles.  After stealing over $64,000, they escaped in a stolen car.

On May 23, 1998, Petitioner, his brother, and another male entered the Commerce Bank in Moorestown, New Jersey.  This robbery also was recorded by the bank's surveillance cameras.

In August of 1998, the Federal Bureau of Investigation ("FBI") sought to apprehend Petitioner, and solicited the assistance of Petitioner's cousin, Fernando Flores.  Flores previously had been a police officer but had resigned from the force.[2]  He agreed to work with law enforcement authorities and worked closely with them to capture Petitioner.  Apparently upon Flores' initial contact with Joseph Rodriguez, the FBI learned that the Rodriguez brothers were interested in "doing a six figure job."  At the instruction of the FBI, Flores told Joseph about a fictional friend who worked as a guard of an armored car.  Flores told Joseph that the armored car was scheduled to service an ATM machine at the Walt Whitman rest stop of the New Jersey Turnpike in Cherry Hill, and that the guard had agreed to allow them to stage a robbery of the armored car in exchange for a portion of the proceeds.

The robbery was scheduled to take place on September 1, 1998.  Roughly one week

---

[1] Unless otherwise indicated, all facts have been taken from Petitioner's § 2255 motion. The origin or source of the facts of the case, as Petitioner has presented them, is unclear. Respondent did not provide this Court with a counter statement of facts.

[2] In his brief Petitioner asserts that Flores resigned from the police department, ostensibly after the department discovered that he had removed a weapon from the evidence locker; however, there is nothing in the parties' submissions that verifies this assertion.

before the robbery was scheduled to take place, Flores, at the FBI's direction, instructed Joseph, and another participant, Jose Soto, to bring their weapons to Flores' apartment to plan the robbery. On August 29, 1998, Joseph and Soto showed up at Flores' apartment with bags containing weapons, clothing, and other gear.

On the day of the robbery, the group (Petitioner, Joseph, Soto, and Flores) drove two cars – one was a stolen Buick and the other was the getaway car – to a neighborhood near the rest stop, where they parked the getaway car. The four then drove in the stolen Buick to the rest stop. Everyone except Flores was armed.

At about 9:00 a.m, the group arrived in the stolen Buick at the rest stop. Law enforcement authorities were present in various locations at the rest stop. As the Buick drove around the parking lot, law enforcement apparently observed Soto grabbing a weapon and pointing it in the direction of the FBI SWAT team, which then opened fire. The driver (not identified in Petitioner's motion papers) continued to drive, despite the gunfire, until a tow truck operated by the FBI struck the car. Petitioner was inside the Buick when he was arrested.

## PROCEDURAL HISTORY

On March 16, 1999, the grand jury in the District of New Jersey returned an eleven-count indictment charging Petitioner with: (1) conspiracy to commit bank robberies and the robbery of an armored car, in violation of 18 U.S.C. § 371 (Count 1); (2) robbery of the Corestates Bank on July 19, 1997, in violation of 18 U.S.C. § 2113(a) (Count 2); (3) use of a firearm during the commission of the Corestates Bank robbery, in violation of U.S.C. § 924(c)(i) (Count 3); (4) robbery of the Commerce Bank on May 23, 1998, in violation of 18 U.S.C. § 2113(a) (Count 4); (5) use of a firearm during the commission of the Commerce Bank robbery, in violation of 18

U.S.C. § 924(c)(i) (Count 5); (6) carjacking, in violation of 18 U.S.C. § 2119 (Count 6); (7) obstruction of commerce by the attempted robbery of the Loomis armored car, in violation of 18 U.S.C § 1951(a) (Count 7); (8) use of an automatic weapon during the attempted robbery of the Loomis armored car, in violation of 18 U.S.C. 924(c)(i) (Count 8); and (9) possession of a firearm by a felon, in violation of 18 U.S.C. 922(g)(1) (Count 9).  (Ex. A to Resp. Br.)  On March 23, 1999, Petitioner pled not guilty to all counts, and proceeded to trial.  (Docket No. 33 [Cr. No. 98-547].)  On July 9, 1999, the jury returned a verdict convicting Petitioner on all counts.  (Docket No. 85 [Cr. No. 98-547].)

On April 6, 2000, this Court sentenced Petitioner to a term of life imprisonment.  (Docket No. 123 [Cr. No. 98-547].)  On April 7, 2000, Petitioner filed a pro se Notice of Appeal with the United States District Court in the District of New Jersey.  (Docket No. 128 [Cr. No. 98-547].)  On January 21, 2003, the Third Circuit Court of Appeals affirmed Petitioner's sentence.  (Docket No. 142 [Cr. No. 98-547].)  On March 24, 2003, the Supreme Court of the United States denied Petitioner's petition for a writ of certiorari.  (Cr. No. 02-9058.)

On January 14, 2004, Petitioner filed a petition ("Petition") to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, and on August 26, 2004, Respondent filed its answer. On September 28, 2004, Petitioner filed his reply.

## LEGAL STANDARDS

**I.**     **28 U.S.C. § 2255**

Section 2255 allows a prisoner in custody to file a petition for a writ of habeas corpus with the sentencing court on the grounds that: (1) the imposed sentence violated the United States Constitution or laws; (2) the court did not have jurisdiction; (3) the sentence exceeded the

maximum allowed by law; or (4) the sentence is subject to collateral attack on other grounds. See 28 U.S.C. § 2255.  "[A] motion to vacate [a] sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).

## II.     Collateral Review

Habeas corpus does not encompass all sentencing errors because it is not a substitute for direct appeal.  See Reed v. Farley, 512 U.S. 339, 354 (1994); United States v. Addonizio, 442 U.S. 178, 184 (1979).  Errors that justify reversal on direct appeal may not necessarily be sufficient to support collateral relief.  See Addonizio, 442 U.S. at 184.

Where a prisoner fails to "raise his claim on direct review, the writ [of habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"  Reed, 512 U.S. at 354.  "To show cause, a petitioner must establish that 'some external impediment' prevented him from raising the claim," such as interference by officials, the unavailability of evidence at the time, or the ineffective assistance of counsel.  See Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "Prejudice exists where 'errors at trial . . . worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Wise, 958 F.2d at 34 (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

Alternatively, where a prisoner has raised, but lost, his claim on direct review, collateral relief is available under § 2255 when the claimed error of law constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Addonizio, 442 U.S. at 185.  As such, the error must be fundamental and present "exceptional circumstances where the need for

5

the remedy afforded by the writ of habeas corpus is apparent." Davis v. United States, 417 U.S. 333, 346 (1974).

This Court, in its discretion, may decline to address issues in a petitioner's collateral attack that previously were addressed to the Third Circuit Court of Appeals on direct appeal. See United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) (stating that "[o]nce a legal argument has been litigated and decided . . . it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255").

## DISCUSSION

Petitioner asserts four separate bases for relief. The first two claims are treated together because they both fail to merit collateral review. Petitioner's ineffective assistance of counsel claim and Blakely-related claim are examined separately, and also shall be denied for the reasons set forth below.

I.  Collateral Review

Petitioner raises two claims on which he failed to seek direct review. First, he contends that his sentence conflicts with Apprendi v. New Jersey, 530 U.S. 466 (2000). In addition, he asserts that the Government's conduct leading up to his arrest was egregious and violated his right to due process. Because Petitioner has failed to persuade this Court that these claims merit collateral review, they are denied.

A.      *Apprendi* **Claim**

Petitioner first claims that his sentence should be vacated because the sentence he received in connection with his conviction under 18 U.S.C § 924(c) contravenes Apprendi and its

6

progeny.[3]  In Apprendi, the Supreme Court of the United States held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

Petitioner contends that, in his case, there were facts that were not charged in the indictment but which increased the penalty for his conviction beyond the prescribed statutory maximum.  He asserts that these facts should have been submitted to the jury and proved beyond a reasonable doubt.  Specifically, Petitioner contends that both the prior conviction determination of § 924(c)(1)(C)(i) and the machine gun determination of § 924(c)(1)(C)(ii) were facts which should have been submitted to the jury.  (Pet. Br. at 3.)  Therefore, Petitioner contends that he should be re-sentenced according to the facts reflected in the jury's verdict.

Respondent counters that this claim does not merit collateral review, because Petitioner has not demonstrated cause for failing to raise this claim on direct review, and there is nothing about this Apprendi claim that Petitioner did not know at the time of the direct appeal.  (Resp. Br. at 6.)  Furthermore, Respondent argues that, even if Petitioner could show cause for failing to raise the claim on direct review, there is no prejudice to Petitioner if this Court were to decline collateral review of this claim now. The jury actually found, beyond a reasonable doubt, that Petitioner had a prior conviction for purposes of § 924(c)(i), and furthermore, prior convictions

---

[3] Section 924(c)(1)(C) provides in relevant part that:

In the case of a second or subsequent conviction under this subsection, the person shall --
    (i) be sentenced to a term of imprisonment of not less than 25 years; and
    (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

are excepted from Apprendi's scope. Additionally, the jury found that the particular firearm involved was a machine gun, as set forth in § 924(c)(1)(C)(ii), and therefore, Petitioner has no basis for relief under § 924(c).

This Court agrees that this claim should be denied. First, Petitioner failed to raise the Apprendi claim on direct review, and has not established cause for this failure. Second, even if it were proper for Petitioner to raise this claim on a collateral attack, he has not shown that declining to hear the claim now will cause prejudice to him.

If a defendant fails to raise his claim on direct review, he waives his right to raise the issue for collateral review, unless he can satisfy two requirements. See Reed, 512 U.S. at 354. He must establish not only "cause" for his failure to raise the issue earlier but also actual prejudice if the alleged violation were to remain unaddressed. Id.

To show cause, a petitioner must demonstrate that "some external impediment" prevented him from raising the claim, such as interference by officials, the unavailability of evidence at the time, or ineffective counsel. See Wise, 958 F.2d at 34. Petitioner does not assert anywhere in his brief an explanation for not raising this Apprendi claim on direct appeal. Having failed to show cause, this Court need not examine whether Petitioner has demonstrated prejudice.[4] Accordingly, this basis for relief under § 2255 is denied.

---

[4] Even if this Court reached the prejudice factor, it is highly unlikely that Petitioner could have established prejudice. As Respondent correctly asserts, according to Apprendi, proof of prior convictions, such as those required under § 924(c)(i), need not be submitted to the jury. Second, the machine gun determination of 924(c)(ii) was submitted to, and decided by, the jury, so Apprendi is inapposite. Indeed, section A(1)(a) of the verdict sheet reflects that this issue was decided by a jury. (Ex. A to Resp. Br.)

### B.     Due Process Claim

Petitioner claims that the Government engaged in egregious conduct in an effort to apprehend him, and thereby deprived him of his right to due process.  More specifically, Petitioner claims that Respondent, frustrated by a host of bank robberies that it was unable to solve, needed to hold someone accountable for these robberies and orchestrated a scheme to peg responsibility for those crimes on Petitioner.  (Pet. Br. at 5.)  Petitioner contends that his alleged gang association, past criminal record, alleged violent behavior, and his status as a fugitive for the attempted murder of a police officer made him an appealing target.  (Pet. Br. at 5.)

Petitioner suggests that, prior to the sting operation that resulted in his apprehension at the Walt Whitman rest stop, Respondent attempted to create a nexus between Petitioner and the bank robberies in the public eye through an aggressive media campaign.  (Pet. Br. at 6.)  Specifically, Petitioner contends, that in various news reports, including "America's Most Wanted," Respondent helped to portray Petitioner as a criminal capable of committing any type of crime.  (Pet. Br. at 6.)  For instance, Petitioner asserts that Respondent, among other things, likened him to Scarface and nicknamed him "Crazy Charlie."  (Pet. Br. at 6.)  Petitioner also argues that many of the facts used to vilify him were specious and completely fabricated.  For example, Petitioner claims that Respondent told the media that Petitioner shot a police officer with an automatic weapon of .223 caliber, the same weapon used in the commission of the bank robberies (Pet. Br. at 6), even though no such proof was offered at trial.  Petitioner contends that this conduct is clear evidence that the Government was attempting to tie Petitioner to the bank robberies.  (Pet. Br. at 6.)

Petitioner further contends that the sting was unnecessary, and that his arrest could have been secured through simpler, more conventional methods. Petitioner claims that the FBI employed the services of Flores, who initiated contact with Petitioner, not to capture Petitioner, but instead to connect Petitioner to the bank robberies and to create additional criminal charges against Petitioner. (Pet. Br. at 7.) Petitioner argues that the sting operation (involving the armored car robbery at the rest stop) strengthened the Government's desired connection between Petitioner and the bank robberies, because the attempted armored car robbery at the rest stop had the same modus operandi as the unsolved bank robberies. (Pet. Br. at 5.) Finally, Petitioner also claims that Respondent had a contingent fee arrangement with Flores to produce evidence against him. (Pet. Br. at 9.) Petitioner concludes that Respondent's conduct as a whole violated his right to due process. (Pet. Br. at 10.)

Respondent argues that Petitioner cannot re-litigate a claim that he and his co-defendants raised unsuccessfully both pretrial and on direct appeal. (Resp. Br. at 9-10.) Furthermore, Respondent contends that, even if this claim is reviewed by this Court, Petitioner failed to establish cause for failing to raise this claim on direct review, or prejudice if this Court were to decline to hear the claim. (Resp. Br. at 9-10.)

This Court agrees that Petitioner's claim of "pre-targeting" does not merit collateral review. This claim, which, he asserts, violated his right to due process, is substantively indistinguishable from the claim of outrageous government conduct raised on direct review by Petitioner and his co-defendants.[5] Indeed, upon direct review, the Court of Appeals for the Third

---

[5] On direct review, the Circuit held that "[a] defendant must show that the government's conduct was 'shocking, outrageous, and clearly intolerable.'" United States v. Rodriguez, 54 Fed. Appx. 739, 748 (3d Cir. 2002). Furthermore, the court stated that "with respect to the alleged

Circuit denied Petitioner's outrageous government conduct claim. (Ex. D to Resp. Br.) Where a prisoner raises, and loses, a claim on direct review, "collateral relief is available under § 2255 when the claimed error of law constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Addonizio, 442 U.S. at 185. Here, Petitioner re-articulates the basis for his prior outrageous-government-conduct claim, and points to little else upon which this Court could conclude that a complete miscarriage of justice would result if this Court were to decline collateral review of Petitioner's assertions. Therefore, this basis for relief is denied.

## II.     Ineffective Assistance of Counsel

Petitioner claims that his sentence should be vacated based on ineffective assistance of counsel.[6] Petitioner contends that counsel's assistance was ineffective for three reasons. First, his trial counsel failed to call Benita Birchfield, Flores' common law wife, as a witness. Petitioner claims that she could have rebutted Flores' testimony that Petitioner had offered to supply various firearms for the attempted armored car robbery. (Pet. Br. at 12-13.) Second, Petitioner claims that trial counsel failed to investigate the alleged relationship between Flores and Roy Whitmore, a police officer from the Merchantville Police Department who also was a member of the FBI team organized to apprehend Petitioner. (Pet. Br. at 14.) Third, counsel neglected to file any motions concerning prejudicial pretrial publicity in connection with the

---

risk of harm created by the government, there is an inherent risk of harm in an attempted armed robbery and we do not find that the government unreasonably increased that risk." Id. Consequently, appellant's claim was denied.

[6]Although Petitioner failed to raise this issue on direct review, he is not precluded from doing so on collateral review. See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that an ineffective assistance of counsel claim may be brought in a collateral proceeding under 28 U.S.C. § 2255, whether or not the petitioner could have raised the claim on direct appeal).

impaneling of the grand jury. (Pet. Br. at 15.)  For the following reasons, this Court concludes that these bases fail to establish a claim of ineffective assistance of counsel.

A claim of ineffective assistance of counsel essentially asserts a violation of a person's Sixth Amendment right to counsel.  To establish this claim, a defendant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceedings.  See Strickland v. Washington, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance must be highly deferential.  See id. at 689.  In determining whether assistance of counsel has been ineffective, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.  If a defendant fails to satisfy one prong of the Strickland test, it need not consider the other.  Id. at 697 (holding that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

### A.     Benita Birchfield

Petitioner asserts that counsel's failure to call Benita Birchfield, Flores' common law wife, as a witness at trial amounts to "per se" ineffective assistance of counsel.  (Pet. Br. at 12.) According to Petitioner, Birchfield could have testified that the weapons used in the attempted armored car robbery were supplied by Flores, not by Petitioner.  (Pet. Br. at 12-13.)  Because Petitioner has not shown that counsel's failure to call Birchfield falls short of an objective standard of reasonableness, this asserted error is insufficient to establish a claim of ineffective assistance of counsel.

To determine whether counsel's failure to call a witness was objectively unreasonable, the first prong of the Strickland standard, a court may consider whether a petitioner has established: (1) the identity and existence of the witnesses; (2) that his counsel was informed of the existence of the witnesses or should have known of them prior to trial; (3) that the witnesses were prepared to cooperate and would have testified on the petitioner's behalf; and (4) that the absence of the witnesses' testimony prejudiced the petitioner so as to deny him a fair trial. See Marlo v. Klem, No. 02-2850, 2003 U.S. Dist. LEXIS 25001, at *24 (E.D. Pa. Sept. 22, 2003) (suggesting consideration of these factors).

Although this Court is not bound to consider these factors, an examination of them is helpful to the present inquiry into whether counsel was ineffective, for purposes of the Sixth Amendment, for failing to call Birchfield. First, with respect to Birchfield, Petitioner has identified Birchfield, the allegedly key witness to this case. (Pet. Br. at 12.) Second, though Petitioner does not claim to have told counsel about Birchfield, Petitioner does suggest that defense counsel should have been aware of Birchfield. Petitioner asserts that "something cloudy was permeating through the air that could have alerted defense counsel as to the importance of Ms. Birchfield [sic] testimony." (Pet. Br. at 13.) Even if this Court were to conclude that the first two factors were satisfied, Petitioner cannot establish that Birchfield was prepared to cooperate on his behalf. Although Petitioner asserts in his brief that Ms. Birchfield was available to testify, and would have testified to various alleged facts (Pet. Br. at 12-13), Petitioner neither alleges nor offers evidence that helpful testimony from Ms. Birchfield was forthcoming or would have been available upon reasonable investigation. Petitioner simply alleges that Birchfield would have made statements that would have discredited Flores' testimony (Pet. Br. at 12-13),

13

but "vague and conclusory allegations that some unspecified and speculative testimony might have established the petitioner's defense do not meet the petitioner's burden of proof." See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991).

This Court is not persuaded by Petitioner's claim that Birchfield would have provided relevant testimony, or that such testimony would have been helpful.  Therefore, it is difficult to conclude that counsel performed in an objectively unreasonable manner by not calling her as a trial witness, or that the absence of her testimony caused Petitioner prejudice.  In conclusion, in light of Petitioner's inability to meet either prong of the Strickland test, this basis for a claim of ineffective assistance of counsel is rejected.

### B.     Roy Whitmore

The second basis for Petitioner's ineffective assistance of counsel claim is that counsel failed to call Roy Whitmore, a police lieutenant of the Merchantville Police Department, as a witness at trial.  Here, too, this Court may consider the factors set forth in Marlo, supra, in determining whether the failure to call a witness at trial demonstrates ineffectiveness of counsel. This Court concludes that this asserted error does not establish a claim of ineffective assistance of counsel.

Essentially, Petitioner questions the propriety of the relationship between Whitmore and the FBI, and that between Whitmore and Flores.  Petitioner asks, "Why did the FBI contacted [sic] specifically Whitmore and what was the connection between this man and informant Flores. [sic]"  (Pet. Br. at 14.)  Petitioner seems suspicious of Whitman's assignment to the FBI task force in charge of capturing Petitioner because he believes that Whitmore has a close relationship with Flores.  He asserts that "[Whitmore's] relation to Fernando Flores was not casual but deeply

14

rooted, more like a police-informant relation." (Pet. Br. at 14.)  Petitioner alleges that Whitmore introduced Flores to the FBI, and that Whitmore "held guns for safekeeping at his house for Flores, and represented him on criminal cases." (Pet. Br. at 14.)  Furthermore, Petitioner also is suspicious of Whitmore because he apparently denied any involvement with the FBI task force when confronted by defense investigators.  (Pet. Br. at 14.)  According to Petitioner, if his attorney had questioned Whitmore, Whitmore might have held or provided information that could have helped to reveal a cover up and misconduct by the Government.

In this Court's view, the fourth <u>Marlo</u> consideration, whether the absence of Whitmore's testimony prejudiced Petitioner so as to deprive him of a fair trial, is critical here.  First, it is not clear how Whitmore's testimony could have revealed government misconduct or a cover up.  The testimony that Petitioner thought his counsel could have sought or obtained from Whitmore remains a mystery, and thus, in the absence of any understanding as to what the proffered testimony might have been, it is impossible for this Court to conclude that the omission of trial testimony from Whitmore prejudiced Petitioner in any way.  A showing of actual prejudice may not be based on "mere speculation about what the witnesses [trial counsel] failed to [utilize] might have said." <u>United States v. Gray</u>, 878 F.2d 702, 712 (3d Cir. 1989).

Thus, because Petitioner cannot demonstrate that counsel's failure to call Roy Whitmore as a trial witness was objectively unreasonable or caused him prejudice, as required under <u>Strickland</u>, Petitioner cannot establish a claim of ineffective assistance of counsel on this basis.

### C.  **Pretrial Publicity**

Petitioner contends that counsel's failure to raise the issue of prejudicial pretrial publicity constitutes ineffective assistance of counsel. (Pet. Br. at 15.)  He seeks relief on two grounds.

15

First, Petitioner asserts that "the pretrial publicity in the form of misrepresentation of the facts by the media infected the grand jury proceedings with unfairness which violated movant's rights under the due process and equal protection clauses of the Fourteenth Amendment." (Pet. Br. at 16.) According to Petitioner:

> [D]ue to the extensive publicity during the period prior to petitioner's indictment the attorney should have filed a motion to dismiss the indictment, or in the alternative a motion pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, permitting him to inspect the minutes of all proceedings before the grand jury which indicted appellant and a motion for an order pursuant to the same rule allowing him to question or depose the members of the grand jury.

(Pet. Br. at 24.) Petitioner states that what is at issue is "whether when the grand jury was impaneled[,] precautions required by the statute and its controlling judicial interpretation to insure [sic] a grand jury that would not be tainted by prejudice against petitioner were taken." (Pet. Br. at 24.) Petitioner concludes that counsel's failure to raise any of the aforementioned motions, pursuant to 28 U.S.C. § 1867, which governs challenges to grand and petit jury selection, amounted to ineffective assistance of counsel.

Additionally, in his reply brief, Petitioner adopts a claim that his brother, Joseph Rodriguez, raised in a § 2255 motion that was filed with, and denied by, this Court. (Civil Action No. 04-85.) Petitioner's brother had contended that pretrial publicity surrounding the offenses for which they were charged had affected the trial jury, and therefore, that his counsel should have raised this issue with this Court. His brother did not claim, as Petitioner does, that pretrial publicity affected the impaneling of the grand jury, and that counsel should have sought relief for Petitioner on this ground.[7]

---

[7] This Court shall not permit Petitioner to incorporate and adopt an additional claim in a reply brief at the eleventh hour, particularly where, pursuant to a Miller order from this Court, he

Respondent argues that the notion that counsel should have moved to dismiss the indictment or to open the grand jury proceedings, based on pre-indictment publicity, cannot establish a claim of ineffective assistance of counsel, because Petitioner cannot show that he suffered prejudice as a result of counsel's failure to raise this issue with the Court. Respondent contends that Petitioner has not demonstrated that there was a reasonable probability that, had counsel raised the issue of pretrial publicity with this Court as a basis for opening grand jury proceedings or dismissing the indictment, the outcome of the case would have been different.

According to Respondent, Petitioner has not shown that counsel even could have met the requisite burden of demonstrating a "particularized need" for opening the grand jury proceedings. Respondent underscores that disclosure of grand jury matters, when requested, is denied routinely in all but extraordinary circumstances, and that this case hardly presents such special circumstances. (Resp. Br. at 21) (citing Costello v. United States, 350 U.S. 359, 364 (1956)). Furthermore, Respondent argues that Petitioner has failed to demonstrate that, in his case, counsel could have shown that the need for disclosure of grand jury proceedings outweighed the long tradition of protecting the secrecy of grand jury proceedings. (Resp. Br. at 20) (citing Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959)). Thus, if Petitioner cannot establish that he had a "particularized need" for the disclosure of opening up the entire grand jury proceeding, or that such need trumped the general secrecy protecting such proceedings, Petitioner cannot assert that there was a reasonable probability that, had counsel

---

was advised that all of his claims must be presented in one § 2255 motion. (Docket No. 2.) Indeed, by letter filed July 9, 2004, Petitioner sought to add another claim, based on Blakely v. Washington, 542 U.S. 296 (2004), to his motion by adopting the claim as it was presented in his brother's petition. (Docket No. 5.) At that time, Petitioner did not seek to incorporate his brother's claim regarding pretrial publicity.

sought to disclose the grand jury proceedings or to dismiss the indictment based on pre-indictment publicity, the outcome of the case would have been different.

Respondent points to other reasons why counsel's failure to challenge the pre-indictment publicity surrounding the case falls short of establishing a Sixth Amendment claim of ineffective assistance. Respondent argues, for example, that there is no clearly established right of a defendant to a grand jury that has not been adversely affected by pre-indictment publicity, and in any event, that Petitioner has presented no evidence that any of the grand jurors were aware of, or adversely affected by, the pretrial publicity. (Resp. Br. at 23, 26.) Finally, Respondent also asserts that the verdict by the trial jury vitiates any claim of problems related to the grand jury, because even if the grand jury's indictment of Petitioner was based in part upon prejudicial, pre-indictment publicity, there is no evidence that the trial jury was affected similarly when it rendered its verdict. (Resp. Br. at 26.) Respondent notes that this Court explored the issue of pretrial publicity surrounding the case during jury selection. (Resp. Br. at 27.)

This Court agrees that Petitioner has failed to satisfy the requisite burdens of establishing a claim of ineffective assistance of counsel. Although Petitioner sets forth the details of some of the press coverage that his case received, this Court ultimately cannot conclude that counsel performed unreasonably by not moving to open the grand jury proceedings or to dismiss the indictment on this basis. First, judicial scrutiny of counsel's performance is highly deferential. See Strickland, 466 U.S. at 689. Second, to the extent that counsel considered the issue of pretrial publicity, and decided not to raise Petitioner's concern about pre-indictment publicity with this Court, that determination was not objectively unreasonable, as the disclosure of grand jury proceedings is justified only where the "ends of justice" so require. See Pittsburgh Plate

Glass Co. v. United States, 360 U.S. 395, 400 (1959); see also United States v. McDowell, 888 F.2d 285, 289 (3d Cir. 1989) ("As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity."). If, as Petitioner has demonstrated here, he could not have shown the sort of "particularized need" for disclosure of grand jury proceedings, this Court cannot conclude that it was objectively unreasonable for counsel not to seek minutes of those of proceedings, or otherwise seek an indictment based on publicity surrounding the case.

To the extent counsel did not consider the issue of pre-indictment publicity, or considered the issue but declined to raise it with this Court, this Court has difficulty concluding that, in either circumstance, Petitioner suffered prejudice. In light of the general public policy against disclosure of these secret proceedings, see McDowell, 888 F.2d at 289, as well as the absence of a "particularized need" for disclosure of the proceedings, and finally, the "substantial discretion" vested in the district courts in determining whether to open grand jury proceedings, this Court cannot conclude that there is a reasonable probability that, had counsel addressed the publicity surrounding the case – either by moving to dismiss the indictment, or by seeking to open the grand jury proceedings – that counsel would have prevailed on either request, i.e., that Petitioner would have benefitted from a different result.

Accordingly, Petitioner's claim of ineffective assistance of counsel is denied.

**III.   *Blakely* Claim**

Although Petitioner relies on Blakely v. Washington, 542 U.S. 296 (2004), as a basis for relief in his original motion, his claim, which asserts that his sentence under the United States

19

Sentencing Guidelines violated his Sixth Amendment rights, actually arises under <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).

This claim must be denied.  Even if this Court overlooks the fact that Petitioner sought to add this claim after the deadline for amending the instant motion expired, Petitioner still would not be entitled to relief.  <u>Booker</u>, which was decided after Petitioner's motion was filed, does not apply retroactively on habeas review to criminal judgments that became final prior to that decision.  <u>See</u> <u>Lloyd v. United States</u>, 407 F. 3d 608 (3d Cir. 2005).  Petitioner's conviction and sentence became final on March 24, 2003, when the Supreme Court denied his petition for a writ of certiorari.  Thus, Petitioner cannot seek relief under <u>Booker</u>, which was decided this year.  Petitioner's final basis for relief under § 2255 is denied.

## CONCLUSION

For the reasons set forth in this Opinion, the Petition is denied.  Furthermore, pursuant to 28 U.S.C. § 2253(c)(2), because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

DATED: August 19, 2005

     S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.